## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH SHERIDAN,<br><br>Plaintiff,<br><br>v.<br><br>SENECA BIOPHARMA, INC., KENNETH CARTER, CRISTINA CSIMMA, DAVID J. MAZZO, BINXIAN WEI, MARY ANN GRAY, and LEADING BIOSCIENCES, INC.,<br><br>Defendants, | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Sheridan ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.       Plaintiff brings this action against Seneca Biopharma, Inc. ("Seneca Biopharma" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Leading BioSciences, Inc. ("Leading BioSciences").

2.       Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on December 23, 2020. The S-4 recommends that Seneca Biopharma stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Seneca Biopharma is acquired by Leading BioSciences. The Proposed

Transaction was first disclosed on December 17, 2020, when Seneca Biopharma and Leading BioSciences announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Leading BioSciences will merge with Seneca Biopharma. The Proposed Transaction is expected to close in the first half of 2021.

3.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, any financial projections prepared by Leading Biosciences, as well as the financial analyses conducted by Cassel Salpeter & Co., LLC ("Cassel Salpeter"), Seneca Biopharma's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Seneca Biopharma's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Seneca Biopharma's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Seneca Biopharma.

6.      Defendant Seneca Biopharma is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 20271 Goldenrod Lane, Germantown, Maryland 80276. Seneca Biopharma common stock trades on

NASDAQ under the ticker symbol "SNCA."

7.      Defendant Kenneth Carter has been Executive Chairman and a director of the Company since 2019.

8.      Defendant Cristina Csimma has been a director of the Company since 2017.

9.      Defendant David J. Mazzo has been a director of the Company since 2019.

10.     Defendant Binxian Wei has been a director of the Company since 2019.

11.     Defendant Mary Ann Gray has been a director of the Company since 2019.

12.     Defendants Carter, Csimma, Mazzo, Wei and Gray are collectively referred to herein as the "Board" or "Individual Defendants."

13.     Defendant Leading BioSciences is a Delaware corporation. Leading BioSciences's principal executive offices are located 5800 Armada Dr. #210, Carlsbad, California 92008.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

15.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

17.     Seneca Biopharma historically focused on developing nervous system therapies based on human neural stem cells and small molecule compounds. Two potential therapeutics have been developed so far: the NSI-566 stem cell therapy program and the NSI-189 small molecule program. Starting in 2019, the Company began looking to acquire or license therapeutics that might benefit from Seneca Biopharma's human neural stem cells or small molecule compounds. In the first quarter of 2020, Seneca Biopharma decided to seek a sale or licensing agreement for NSI-566 or NSI-189.

18.     On December 16, 2020, the Company entered into the Merger Agreement with Leading BioSciences.

19.     According to the press release issued on December 17, 2020 announcing the Proposed Transaction:

**Leading BioSciences and Seneca Biopharma Announce Merger**

*Combined Company to be Named Palisade Bio Creating Nasdaq-listed Company Focused on Advancing Leading BioSciences' Clinical Programs*

*Concurrent financing of $22.5 Million Led by Altium Capital*

*Companies to Host Conference Call to Discuss Transaction on December 17, 2020 at 8:30a.m. ET*

GERMANTOWN, Md. and CARLSBAD, Calif., December 17, 2020 /PRNewswire/ -- Seneca Biopharma, Inc. (Nasdaq: SNCA) ("Seneca"), and Leading BioSciences, Inc. ("LBS"), a privately held company focused on developing novel therapeutics to improve human health through therapeutic protection of the gastrointestinal ("GI") mucosal barrier, announced today that they have entered into a definitive agreement under which a wholly owned subsidiary of Seneca will merge with LBS in an all-stock transaction. The combined company will focus on advancing LBS's lead pipeline asset, LB1148, in clinical studies to evaluate its potential to improve restoration of normal GI function following major surgery and reduce certain postoperative complications such as abdominal adhesions. Upon completion of the merger, the company is expected to operate

4

under the name Palisade Bio, Inc. and trade on the Nasdaq Capital Market under the ticker symbol PALI.

Altium Capital has agreed to invest $22.5 million at the close of the merger, subject to customary conditions. The private placement financing will help fund continued development of the combined company's clinical programs, including LB1148, and is expected to close immediately prior to the completion of the merger.

LB1148 is a Phase 3-ready, patent-protected, oral formulation of a broad-spectrum serine protease inhibitor designed to neutralize the activity of potent digestive proteases that are released from the gut during surgery, which in turn contribute to the temporary loss of normal gastrointestinal function and formation of postoperative adhesions. By inhibiting the activity of these digestive proteases, LB1148 has the potential to prevent damage to GI tissues, accelerate the time to return of normal GI function, and shorten the duration of costly post-surgery hospital stays.

"This is a transformational event for Leading BioSciences, and a critical next step in the evolution of the Company. Through this merger, the newly formed Palisade Bio will be optimally positioned to advance our lead drug candidate LB1148 through the final phases of clinical development for FDA approval," said Tom M. Hallam, Ph.D., chief executive officer of LBS. "We are excited to commence pivotal studies with LB1148 in our first indication to reduce the time to return to normal postoperative GI function following neonatal open-heart surgery. This oral therapeutic has the potential to be transformative for improving outcomes in multiple surgery indications."

Kenneth C. Carter, Ph.D., executive chairman of Seneca, remarked, "Following an extensive review of strategic alternatives, we believe that this merger with Leading BioSciences is in the best interest of Seneca's stockholders, and has the potential to deliver both near- and long-term value to the stockholders. The strength and dedication of the Leading BioSciences leadership team, combined with their highly differentiated pipeline assets and enthusiastic support from leading clinicians, provides a compelling foundation for future success for all stakeholders, and they have our full support."

**About the Proposed Transaction**
The merger is structured as a stock-for-stock transaction whereby all of LBS's outstanding shares of capital stock and securities exercisable for LBS's common stock will be exchanged for Seneca common stock and securities exercisable for Seneca common stock. On a pro forma basis and based upon the number of shares of Seneca common stock to be issued or issuable in the merger, it is anticipated that Seneca equity holders immediately following the merger will own approximately 26.2% of the combined company and LBS equity holders (inclusive of investors in the financing) immediately following the merger will own approximately 73.8% of

the combined company on a fully diluted basis using an adjusted treasury stock method.

Shareholders of Seneca will also receive one contingent value right ("CVR") for each share of Seneca common stock (including any warrants exercisable for shares of Seneca common stock) as a dividend. This will entitle the holder to receive, in certain circumstances, a certain percentage the net proceeds, if any, derived from the sale or license of the intellectual property of Seneca. Full details of the CVR agreement will be contained in Seneca's S-4 to be filed with the SEC.

Final share exchange allocations will be subject to adjustment based on Seneca's net cash balance at the time of closing. The transaction has been approved by the board of directors of both companies. The merger is expected to close in the first half of 2021 subject to the approval of Seneca stockholders at a special stockholder meeting, the approval of LBS stockholders, the closing of the financing, as well as other customary conditions.

**B. The Materially Incomplete and Misleading S-4**

20.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Seneca Biopharma stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

21.     On December 23, 2020, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Seneca Biopharma stockholders. Without this information, Plaintiff and other Seneca Biopharma stockholders cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

***Materially Misleading Statements/Omissions Regarding Financial Forecasts***

22.     The S-4 indicates that in connection with the rendering of Cassel Salpeter's fairness opinion, Cassel Salpeter reviewed publicly available financial information and "certain other information and data with respect to Seneca [Biopharma] and [Leading Biosciences]" provided by Seneca Biopharma and Leading Biosciences. Defendants failed to disclose what that "other

6

information and data" are and whether that includes financial projections. No projections were provided for Seneca Biopharma, and the S-4 states that none exist. However, no projections were disclosed for Leading Biosciences, either. Given that the Proposed Transaction will leave Plaintiff and other Seneca Biopharma stockholders holding only 26.2% of the combined company's stock, the financial projections for Leading Biosciences are necessary for Plaintiff and other Seneca Biopharma stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Cassel Salpeter's Financial Analyses

23.     The S-4 does not disclose information necessary for Plaintiff and the other Seneca Biopharma stockholders to understand the fairness of the Proposed Transaction. For example, with respect to the *Selected Companies Analysis,* the S-4 does not to disclose the multiples for Market Value, Total Invested Capital, Cash/Total Invested Capital, 2021E Revenue and 2022E Revenue for each company. The S-4 also fails to disclose how Cassel Salpeter derived a range of implied equity value for Leading Biosciences of $58.4 million to $87.6 million. The range of observed Total Invested Capital is $46.3 million to $2.4 billion. The range implied by the Cash/Total Invested Capital is $11.4 million to $527.2 million. Plaintiff and the other Seneca Biopharma stockholders deserve to understand how Cassel Salpeter took these figures and arrived at an "objective" indication of value that was so narrow.

24.     There are similar issues with the *Selected Initial Public Offerings Analysis*. The S-4 fails to disclose the objective selection criteria for each company, as well as the multiples for Gross Offering Amount, Pre-Money, Post-Money, % Post Money Equity Value and Post Money Equity Value/Book Value of Invested Equity for each company. The S-4 also fails to explain how Cassel Salpeter derived a 0.7x to 1.0x range of implied multiples of Post Money Equity

Value/Book Value of Invested Capital, given that the observed range is 1.2x to 5.1x. Based on what is (and is not) disclosed, it is unrealistic that Cassel Salpeter could have objectively selected a range of multiples that lay entirely below the observed range and simultaneously produced a range of results that so nearly matched the range ostensibly produced by the *Selected Companies Analysis*.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

25.     According to the S-4, the Company began looking in February 2019 for strategic alternatives. Over the course of 18 months, Seneca Biopharma and its advisors evaluated more than 131 in-licensing, 27 reverse merger and 291 out-licensing opportunities. Yet the S-4 fails to disclose material information concerning the sales process.

26.     For example, the S-4 fails to state whether Seneca Biopharma entered into any confidentiality agreements with Party 1, Party 2, Party 3, Party 4, Party 5, Party 6, Party 7, Party 8, Party 9, Party 10, Party 11, Party 12, Party 13, Party 14, or Leading BioSciences. If any such confidentiality agreements exist, the S-4 does not disclose whether they are still in effect and/or contain "don't-ask-don't-waive" standstill provisions that are presently precluding each and every of those parties from making a superior proposal.

27.     An advisor to Seneca Biopharma, Hibiscus Bioventures ("Hibiscus"), presented findings and analyses to the Company's management and Board throughout the process. Yet those analyses and findings were not disclosed. This includes the preliminary findings for "ongoing merger candidates" as presented to the Company's management on June 12, 2020; the comparison of the potential value of the proposals received from Party 1, Party 2, Party 4, Party 5, and Party 7 as provided to Seneca Biopharma's management on July 3, 2020; and the information about

Leading Biosciences, the terms of the proposal and the potential value to Seneca Biopharma's stockholders as discussed with the Board's Transaction Committee on November 17, 2020.

28.     In 2020, Seneca Biopharma began a process for potential reverse mergers. By June 30, 2020, merger offers had been received by five parties: Party 1, Party 2, Party 4, Party 5, and Party 7. The S-4 does not disclose any information about the specifics of the offers or how they valued Seneca Biopharma. In July 2020, Seneca Biopharma's management decided not to move forward with Party 5 and Party 9 based on their proposed valuation of the Company compared to the other proposals received. The S-4 does not disclose any information about those valuations.

29.     More parties and more proposals joined the process throughout the summer of 2020. At a meeting of Seneca Biopharma's Board on August 13, 2020, Hibiscus and the Company's management provided an overview of the proposals made by Party 2 and Party 4, and the valuations of those proposals. The S-4 does not disclose any other information about the proposals, including terms or the proposed valuations. The next day, the Company received a proposal from Party 13; the S-4 does not disclose any more information than that.

30.     According to the S-4, between August 21 and 25, 2020, Party 2, Party 12, and Party 13 sent their best and final offers. Revised offers were sent by Party 1, Party 4, and Party 12 between September 14 and 17, 2020. Leading Biosciences submitted a proposal on September 22, 2020 and a revised proposal on September 30, 2020. There is no other information disclosed about those offers, including terms or the proposed valuation of Seneca Biopharma.

31.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff and the

other Seneca Biopharma stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

32.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

33.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

34.     Further, the S-4 indicates that on December 16, 2020, Cassel Salpeter reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to Seneca Biopharma stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Cassel Salpeter's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

35.     Plaintiff and the other Seneca Biopharma stockholders are immediately threatened by the wrongs complained of herein and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Defendants have filed the S-4 with the SEC with the intention of soliciting Seneca Biopharma stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

38.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Seneca Biopharma, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) financial projections; (ii) the value of Seneca Biopharma and the financial analyses performed by Cassel Salpeter in support of its fairness opinion; and (iii) the sales process.

11

41.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Cassel Salpeter reviewed and discussed its financial analyses with the Board on December 16, 2020, and further states that the Board relied upon Cassel Salpeter's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

42.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Seneca Biopharma stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Seneca Biopharma stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Seneca Biopharma stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Seneca Biopharma within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their

positions as officers and/or directors of Seneca Biopharma and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

47.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Seneca Biopharma stockholders will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Seneca Biopharma stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

14

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 8, 2021                          **ROWLEY LAW PLLC**

                                                *S/ Shane T. Rowley*
                                                Shane T. Rowley (SR-0740)
                                                Danielle Rowland Lindahl
                                                50 Main Street, Suite 1000
                                                White Plains, NY 10606
                                                Tel: (914) 400-1920
                                                Fax: (914) 301-3514
                                                Email: srowley@rowleylawpllc.com
                                                Email: drl@rowleylawpllc.com

                                                *Attorneys for Plaintiff*